UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARTNER, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE HACKETT GROUP, INC., JEFFREY FARAMO, and JOHN VAN DECKER,<br><br>　　　　Defendants. | No. 3:23-cv-688 (SRU) |

## **PRELIMINARY INJUNCTION ORDER**

Plaintiff Gartner, Inc. ("Gartner") sued The Hackett Group, Inc. ("Hackett"), Jeffrey Faramo, and John Van Decker for breach of contract, trade secrets misappropriation, and tortious interference. Gartner then filed a motion seeking a preliminary injunction to prevent Faramo and Van Decker from working for Hackett and otherwise competing with Gartner, to prevent all defendants from misappropriating Gartner's trade secrets, to prevent Hackett from interfering with Gartner's non-competition agreements with Faramo and Van Decker, and for attorneys' fees.[1] Doc. No. 22.

I held an evidentiary hearing on October 24, 2023 on the merits of Gartner's motion. At the hearing, all parties consented to a preliminary injunction requiring all defendants to return and/or destroy any allegedly confidential and trade secret information belonging to Gartner,

---

[1] Attorneys' fees may be ordered when a party obtains a preliminary injunction "governed by [an] assessment of the merits" but "never obtain[s] final judgments in their favor on the merits." *LaRouche v. Kezer*, 20 F.3d 68, 74 (2d Cir. 1994). In this case, it is too soon to know whether Gartner will not eventually obtain a final judgment. Therefore, Gartner's request for attorneys' fees is premature, and I deny that request, without prejudice.

which I issued today. Doc. No. 110. Gartner also agreed on the record not to pursue injunctive relief at this stage against Hackett related to its tortious interference claim, because the relief it sought would be duplicative of any injunction barring Faramo and Van Decker from working for Hackett. The remaining relief sought by Gartner relates to its claim that Faramo and Van Decker breached their post-employment non-competition agreements with Gartner.

For the reasons that follow, Gartner is entitled to a preliminary injunction enforcing Faramo and Van Decker's non-competition covenants.

**I.    Facts**

Based on the evidence presented at the October 24, 2023 hearing, I find the following facts.[2]

Gartner is a Connecticut-based company that provides syndicated research and advisory to business clients. Hackett is a Florida-based company that provides IP-based executive advisory to business clients, and is rapidly expanding its syndicated research practice, which directly competes with Gartner. Jeffrey Faramo was employed by Gartner from 2004 until 2023, during which time he worked in various positions within Gartner's sales department, most recently having the title of Managing Vice President. John Van Decker was employed by Gartner from 2008 until 2022 as a Research Vice President. In this role he produced research reports and provided guidance to clients on enterprise resource planning and financial management technologies. On March 4, 2022, both Faramo and Van Decker signed new employment agreements ("the Agreements") that each contained identical one-year, global post-employment

---

[2] In this ruling, all exhibits that I cite to were offered and admitted at the October 24, 2023 hearing. *See* Exhibit and Witness List, Doc. No. 103.

non-disclosure, non-competition, and non-solicitation covenants. The Agreements define as "Competitive Acts":

> (A) the development, production, marketing or selling of (or assisting others to develop, produce, market or sell): (x) syndicated research that competes with Gartner or its subsidiaries; or (y) a product or service which is competitive with the existing or planned products or services of the Company with which Employee was involved in or managed at any time during the last twenty-four (24) months of the Employment; and/or (B) the direct or indirect provision of services to, or solicitation of, the Company's clients or known prospects with whom Employee had contact, managed, or became aware of as a result of being employed by the Company, for the purposes of developing, producing, marketing or selling such competitive products or services.

Faramo Agreement, Ex. 3, at ¶ 6(a)(i); Van Decker Agreement, Ex. 26, at ¶ 6(a)(i).

Jeffrey Faramo received a job offer from Hackett in February 2023 for the position of Senior Vice President, Global IPB Sales, with the internal title of Principal, and announced his resignation from Gartner on the same day. He left Gartner in March, and began working for Hackett on April 3, 2023. On multiple occasions in February 2023 Faramo sent emails from his Gartner email address to his personal email address, attaching Gartner documents that allegedly contained confidential and trade-secrets information belonging to Gartner. *See* Ex. 41; Ex. 42; Ex. 43. At least some of these documents were then either loaded onto a flashdrive and transferred to Faramo's Hackett computer, and/or sent via email to other Hackett employees. *See, e.g.* Ex. 1.

John Van Decker received a job offer from Hackett in July 2022 for the position of Associate Principal, Vice President of Research Services. He also resigned from Gartner in July, 2022, and began working for Hackett in August. For the first six months of his employment at Hackett, Van Decker was assigned to a role other than the one he was hired to perform. In February of 2023, he began his role leading Hackett's research team. Also for the first six months of his employment at Hackett, Van Decker took efforts to conceal the fact of his employment at Hackett from Gartner, including not posting about his new job on LinkedIn, and

sending messages to other Hackett employees reminding them to keep the news of his hiring "internal." *See* Ex. 18; Ex. 21; Ex. 22.

On May 26, 2023, Gartner sued Hackett, Faramo, and Van Decker and sought, among other things, entry of a Preliminary Injunction against Faramo and Van Decker enjoining them from committing further violations of their non-competition obligations to Gartner, for the full term of such restrictions, as contemplated by the Agreements' tolling provisions.

## II.     Standard of Review

To obtain a preliminary injunction, the plaintiff must show: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (cleaned up). A movant seeking to demonstrate a likelihood of success on the merits "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on unrelated grounds by O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). However, where a movant seeks a "mandatory preliminary injunction that alters the status quo," rather than a "prohibitory injunction seeking only to maintain the status quo," the burden of proof is more stringent. *Cacchillo v. Insmed, Inc.,* 638 F.3d 401, 406 (2d Cir. 2011). In that instance, a movant must demonstrate a "clear" or "substantial" likelihood of success on the merits. *See Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir. 2008).

### III. Discussion

#### A. Clear Likelihood of Success on the Merits

##### 1. Breach of Contract

To obtain a preliminary injunction, Gartner must establish that it is likely to succeed on the merits of its breach of contract claim against Faramo and Van Decker. To do so, Gartner must prove "[1] formation of an agreement, [2] performance by one party, [3] breach of the agreement by the other party, and [4] damages." *CCT Commc'ns, Inc. v. Zone Telecom, Inc.,* 327 Conn. 114, 133 (2017) (quoting *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.,* 311 Conn. 282, 291 (2014). The defendants do not dispute that they did agree to the non-compete provisions in their employment contracts, which they each signed on March 4, 2022. *See* Faramo Agreement, Ex. 3; Van Decker Agreement, Ex. 26. Both agreements are governed by Connecticut law. *See Id.* at ¶ 15. Additionally, consideration, in the form of additional compensation, supported their promises not to compete: Faramo signed the Agreement in return for an award of restricted stock units, and Van Decker signed the Agreement in return for a new position that offered the prospect of an increase in total compensation.

The defendants argued, at times, that Hackett is not a direct competitor of Gartner. Hackett CEO Ted Fernandez testified that "the advice and the point of view [of Hackett] is distinctly different." This is unconvincing. At numerous points during the October 24 hearing, Fernandez and other witnesses testified that Hackett competes with Gartner for the "same dollars." And Fernandez clearly admits in a signed affidavit that "Hackett competes with Gartner in the research advisory space." Aff. of Ted Fernandez, Doc. No. 93, at ¶ 5. Regardless of the differences in size or perspective of Hackett and Gartner, they sell the same product to business clients: syndicated research and advice. Given that Hackett and Gartner are competitors,

5

there is no dispute that Faramo and Van Decker breached their post-employment non-competition agreements with Gartner. Both are employed in substantially similar positions at Hackett to their former positions at Gartner. Both possess confidential information about Gartner's sales and research methodologies, garnered over the many years that both worked for Gartner. Both are engaged in "Competitive Acts" as defined by the Agreements, because they are engaged in the "development, production, marketing or selling of . . . syndicated research," in their respective roles at Hackett. *See* Faramo Agreement, Ex. 3, at ¶ 6(a)(i); Van Decker Agreement, Ex. 26, at ¶ 6(a)(i). Therefore, Gartner has established a clear likelihood of success on the merits of its breach of contract claim against Faramo and Van Decker.

Finally, Gartner asserts that, consistent with the tolling provision in both Faramo and Van Decker's employment agreements, the defendants should be enjoined from working for Hackett for 12 months following the entry of the preliminary injunction order. Faramo Agreement, Ex. 3, at ¶ 6(f); Van Decker Agreement, Ex. 26, at ¶ 6(f) ("In the event of Employee's breach or violation of this Section 6, or good faith allegation by the Company of such breach or violation, the restricted periods set forth in this Section 6 shall be tolled until such breach or violation, or allegation thereof, has been duly cured or resolved, as applicable."). The defendants do not contest that this is the proper time frame for any injunction, and I find that it is therefore appropriate to toll the non-competition period as contemplated in the Agreements.

### 2.     Validity of the Contracts

Faramo and Van Decker argue that, even if they are not in compliance with the terms of the Agreements, the Agreements are invalid under Connecticut law and thus unenforceable.

Under Connecticut law, a covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable if the restraint is reasonable. *New*

*Haven Tobacco Co. v. Perrelli*, 18 Conn. App. 531, 533 (1989). In determining whether a covenant is reasonable, the court considers: "(1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." *Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 529 n.2 (1988). This test is "disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." *New Haven Tobacco Co.*, 18 Conn. App. at 534.

      First, many Connecticut courts have held that time limitations on non-competes of over one year are reasonable. *See Weiss v. Wiederlight*, 208 Conn. at 531-32 (two-year covenant enforced); *Scott v. General Iron & Welding Co.*, 171 Conn. 132 (1976) (five-year covenant enforced). The defendants do not challenge the reasonableness of the one-year time limitation on the non-competition covenants in the Agreements, and in similar circumstances courts routinely hold that a one year restriction is reasonable. *See United Rentals, Inc. v. Frey,* 2011 WL 693013, at *6 (D. Conn. Feb. 18, 2011); *United Rentals, Inc. v. Bastanzi*, 2005 WL 5543590, at *7 (D. Conn. Dec. 22, 2005).

      Additionally, many cases have found that even noncompete agreements that are worldwide in scope are reasonable where the plaintiff's business is global. *See Syfact, Inc. v. Das*, 2007 WL 9757694 , *5 (D. Conn. Oct. 30, 2007) ("the worldwide scope accurately captures the market serviced by the plaintiff, which is global"); *3M v. Francavilla*, 191 F. Supp. 2d 270, 280 (D. Conn. 2002) ("Although the restriction offers [the plaintiff] global protection, the restriction is narrowly tailored to protect [the plaintiff] only in the geographic areas where it does business."); *Branson Ultrasonics Corp. v. Stratman*, 921 F. Supp. 909, 913 (D. Conn. 1996)

7

(finding geographic scope of worldwide covenant not to compete to be reasonable in light of employer's international marketing activities).

Faramo and Van Decker's non-competition agreements with Gartner are effective for one year after termination, and have no geographic limitation. In light of the circumstances, and consistent with existing caselaw, this geographic and temporal scope is reasonable. Gartner has established that its business is global. Moreover, the nature of its business, providing intangible information and advice to clients worldwide, does not lend itself to a geographic limitation.

The defendants contend that the non-competition covenants are unreasonable because they offer too high a degree of protection to Gartner. The Connecticut Supreme Court explains that "[R]estrictions are valid when they appear to be reasonably necessary for the fair protection of the employer or business or rights." *Weiss v. Wiederlight*, 208 Conn. at 533. Applying that decision, courts generally look to whether the employee(s) had access to confidential and trade-secret information, including but not limited to the identities of the employer's clients, and whether there was a risk of the employee misappropriating that information. *See, e.g., id.* ("[t]he trial court's conclusion that the covenant was reasonable was consistent with evidence that the plaintiff sought to protect information regarding current and potential customers"); *Syfact, Inc. v. Das*, 2007 WL 9757694, at *5 (D. Conn. Oct. 30, 2007) ("The evidence shows that the defendant was a high-level, knowledgeable employee . . . [t]he plaintiff is reasonably concerned about the possibility of its competitors learning proprietary information that is the basis of its business.").

In their brief, the defendants argue that the non-competition covenants are unreasonable because they would prevent Faramo and Van Decker from working for any company, in any capacity, that competes with Gartner, and therefore the covenants are not "narrowly tailored" to protect Gartner's interests. Opp'n Br., Doc. No. 60, at 12. That assertion appears inaccurate.

Multiple witnesses testified at the October 24 hearing that both Faramo and Van Decker could, without engaging in "Competitive Acts" as defined in the Agreements, even work for Hackett in various roles. However, both were hired into roles virtually identical to those they held at Gartner, albeit with more managerial responsibility. Moreover, both possess confidential information about Gartner's sales and research methodologies, which testimony and other evidence has shown they either have already disclosed to Hackett, or will inevitably rely on in carrying out their roles at Hackett. It is therefore reasonable for Gartner to worry that Hackett will unfairly benefit from Faramo and Van Decker's knowledge of the syndicated research market and of Gartner's proprietary products and methodologies. The non-competition covenants in the Agreements thus afford Gartner a fair degree of protection.

The fourth factor considers the interests of the employee. "A restrictive covenant is unenforceable if by its terms the employee is precluded from pursuing his occupation and thus prevented from supporting himself and his family." *Scott v. Gen. Iron & Welding Co.*, 171 Conn. at 138. However, not all restraints on employment are unreasonable, and courts generally find time-restricted restraints to be reasonable where they do not "indefinitely restrict the [employee's] right to future employment," and allow the employee to pursue other similar work in the interim. *Id.* at 141. "By its very nature, a restrictive covenant affects a defendant's opportunity to pursue his occupation," and therefore the question is whether the restriction is reasonable. *United Rentals, Inc. v. Bastanzi*, 2005 WL 5543590, at *7 (D. Conn. Dec. 22, 2005).

The defendants argue that the non-competition covenants are an unreasonable restriction on Faramo and Van Decker's ability to pursue their occupation, due to the agreements' lack of a geographic limitation and broad definition of "competitive acts", effectively prohibiting the defendants from working for "anyone in the industry in which they have been employed for over

9

two decades." Opp'n Br., Doc. No. 60, at 20. But, again, Gartner has shown that both Faramo and Van Decker could be employed in similar roles at a wide variety of companies in the broader technology and consulting industries, or even in slightly different roles at Hackett, without violating their Agreements. Additionally, both were highly compensated at Gartner, and continue to be at Hackett. Considering the one-year time limitation and the other opportunities available to both Faramo and Van Decker, the non-competition covenants do not unfairly restrict their ability to earn a living and pursue their occupation.

Finally, the defendants argue that non-competition covenants are not in the public interest because they risk the creation of a monopoly. However, aside from generalized allegations about the size and annual revenue of Gartner, the defendants do not provide any concrete evidence of a risk of monopoly, and the fact that Hackett itself boasts a rapidly growing market share of the syndicated research market rebuts this contention. Other factors that Connecticut courts consider when determining if a non-competition agreement interferes with the public interest are whether the employer is seeking to protect a "legally recognized interest" and whether the enforcement of the non-compete will "deprive the public of essential goods and services." *New Haven Tobacco Co.*, 18 Conn. App. at 536. It is undisputed that Gartner is attempting to protect a legally recognized interest: its trade secrets. *See Aventri, Inc. v. Tenholder*, 2018 WL 7348013 (D. Conn. Dec. 18, 2018) ("[t]here is a substantial public interest in the protection of trade secrets and proprietary information as well as the enforceability of contracts."). Moreover, neither party argues that Faramo or Van Decker's line of work constitutes an "essential good or service." Therefore, the Agreements do not interfere with the public interest.

Having determined that Gartner's non-competition covenants, at least as applied to Faramo and Van Decker, satisfy all requirements of reasonableness under Connecticut law, I conclude that they are enforceable.

### B. **Irreparable Harm**

Gartner has also carried its burden of showing that, absent injunctive relief, it will suffer irreparable harm. Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *United States SEC v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014). Gartner alleges that it will suffer irreparable harm without an injunction because Faramo and Van Decker's continued employment with a competitor will undermine Gartner's business interests, and because there is no other adequate remedy at law. The defendants respond that Gartner has not proven actual or imminent lost revenue as a result of the defendants' actions, and has other adequate remedies in the form of money damages.

Connecticut courts have held that irreparable harm may be rebuttably presumed in cases where the plaintiff alleges a breach of a non-compete agreement. *Pop Radio, LP v. News America Marketing In-Store, Inc*., 49 Conn. Supp. 566, 575 (Conn. Super. Ct. Sept. 15, 2005); *Sagarino v. SCI Connecticut Funeral Services, Inc.,* 2000 WL 765260, at *2 (Conn. Super. Ct. May 22, 2000) ("Irreparable injury and lack of an adequate remedy at law is considered to be automatically established where a party seeks to enforce a covenant not to compete"); *Musto v. Opticare Eye Health Centers, Inc*., 2000 WL 1337676, at *3 (Conn. Super. Ct. Aug. 9, 2000); *Century 21 Access America v. Lisboa*, 35 Conn. L. Rptr. 272, 273 (Conn. Super. Ct. 2003) (noting that Connecticut courts typically find per se irreparable harm when a non-compete clause has been breached). Notably, the Agreements signed by Faramo and Van Decker also explicitly

11

presume irreparable harm in the case of a breach. *See* Faramo Agreement, Ex. 3, at ¶ 9; Van Decker Agreement, Ex. 26, at ¶ 9 ("a breach of this Agreement by Employee will result in irreparable and continuing damage to the Company.").

However, the Second Circuit warns that courts "must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm . . . . Instead, the court must actually consider the injury the plaintiff will suffer . . . paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (citing *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)). District of Connecticut cases inconsistently heed this warning not to adopt general presumptions of irreparable harm. *Compare E. Computer Exch., Inc. v. King,* 2022 WL 2527976, at *4 (D. Conn. July 7, 2022) ("A court may not "presume" that a plaintiff will suffer irreparable harm"); *with United Rentals, Inc. v. Frey,* 2011 WL 693013 (D. Conn. Feb. 18, 2011) ("a presumption of irreparable injury is appropriate and justified").

But, even without adopting a presumption that the violation of a non-compete agreement creates irreparable harm, courts within the Second Circuit routinely explain that the harm that results from a violation of a non-compete agreement can be hard to quantify, especially when the employee is one who has access to confidential information such as the identity of customers. "Generally, when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm." *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004). *See also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69–70 (2d Cir.1999) (it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come."). Additionally, in cases where

trade secrets misappropriations are also alleged, courts reaffirm that monetary damages are very often insufficient: "The loss of trade secrets cannot be measured in money damages." *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 62–63 (2d Cir. 1984). *See also Minnesota Mining And Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 278 (D. Conn. 2002) ("Loss of confidential and proprietary information is not measurable in money damages.").

The reasoning of those cases applies with strong force here. Hackett is rapidly expanding its business in the syndicated research market, competing directly with Gartner. Additionally, Faramo and Van Decker possess and either have already, or likely will divulge confidential information to Hackett that will allow it to unfairly compete with Gartner. Contrary to the defendants' arguments, the size of Gartner's current market share, annual revenue, and team of employees is of no consequence, because at this stage Gartner does not need to show that it has suffered a quantifiable loss in order to be entitled to the injunctive relief that it seeks. Moreover, if Gartner does succeed on the merits of its claims against the defendants, it will remain incredibly difficult to quantify the amount of business, actual or prospective, that Gartner will lose as a result of the direct actions of Faramo and Van Decker. The loss of Gartner's confidential information, including about sales and research methodologies that Gartner employees testified that it took decades to hone, is not something adequately measured in money damages. Therefore, Gartner has proven that it will suffer irreparable harm in the absence of an injunction.

### C. Balancing of Hardships and the Public Interest

Finally, Gartner has also demonstrated that the balance of the hardships tip in its favor, and that the public interest would not be disserved by the issuance of a preliminary injunction. Gartner argues that an injunction should be granted because it would not prevent the individual

defendants from obtaining employment altogether, but merely would require them to abide by their contractual obligations, while protecting Gartner from a high degree of harm and promoting the public interest in the enforcement of contracts. The defendants respond that an injunction should not be granted because it would unduly restrict the employment opportunities of the individual defendants and harm the public's interest in workplace mobility.

The defendants' position is that post-employment non-competition agreements categorically harm employees and the public interest. *See* Opp'n Br., Doc. No. 84, at 37 (citing out-of-state laws and a proposed federal regulation banning non-competition agreements). What matters here is Connecticut law, though, which permits the use and enforcement of non-competition clauses. *See A Royal Flush, Inc. v. Arias*, 2018 WL 4539677, at *4 (D. Conn. Sept. 21, 2018) ("there is no injury to the public by enforcing this preliminary injunction . . . . Indeed, post-employment restrictive covenants go back [more than] 300 years.") (internal citations omitted). The non-competition agreements that Faramo and Van Decker signed are reasonable under Connecticut law, and therefore the defendants' arguments fail. Gartner's arguments, on the other hand, are convincing. A preliminary injunction merely will place the defendants in the position they contracted to be in, and, as described above, will not be unduly burdensome on Faramo and Van Decker's abilities to earn a living. *See, e.g., A.H. Harris & Sons, Inc. v. Naso*, 94 F. Supp. 3d 280, 301-02 (D. Conn. 2015) ("the only true harm to Naso is being required to fulfill her duties under the Agreement, and the only harm to White Cap is the loss of an employee it should not have hired."); *Empower Energies, Inc. v. Solar Blue, LLC*, 2016 WL 5338555, *13 (S.D.N.Y. Sept. 23, 2016) ("There is a well-recognized public interest in enforcing contracts and upholding the rule of law") (citations omitted). On the other hand, Gartner will suffer irreparable harm if Faramo and Van Decker continue to breach their non-competition

agreements. For these reasons, the balance of the hardships tips decidedly in Gartner's favor, and the public interest is served by issuance of the preliminary injunction.

## IV.     Conclusion

Plaintiffs have carried their burden of proving that they enjoy a substantial likelihood of success on the merits of their breach of contract claim, that they will suffer irreparable harm in the absence of injunctive relief, that the balance of the hardships tip decidedly in their favor, and that injunctive relief will not harm the public interest. Therefore, a preliminary injunction is necessary and appropriate pending the final resolution of this case. Therefore:

**IT IS ORDERED**, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, that:

a) Faramo and Van Decker shall not, for twelve (12) months following the entry of this order, on their own behalf or on behalf of Hackett, directly or indirectly develop, produce market, or sell (or assist others to develop, produce, market or sell): syndicated research that competes with Gartner; or a product or service which is competitive with the existing or planned products or services of Gartner with which Faramo or Van Decker were involved or managed at any time during the last twenty-four (24) months of their respective employments;

b) Faramo and Van Decker shall not, for twelve (12) months following the entry of this order, on their own behalf or on behalf of Hackett, directly or indirectly, provide services to, or solicit, Gartner's clients or known prospects with whom Faramo or Van Decker had contact, managed, or became aware of as a result of being employed by Gartner, for the purposes of developing, producing, marketing or selling syndicated research or another product or service which is competitive with the existing or planned products or services

of Gartner with which Faramo or Van Decker were involved or managed at any time during the last twenty-four (24) months of their respective employments;

c) Faramo and Van Decker shall not, for twelve (12) months following the entry of this order, on their own behalf or on behalf of Hackett, directly or indirectly entice, encourage, cause or invite any of Gartner's clients, prospects, or vendors, with whom Faramo or Van Decker had contact, managed, or became aware of at any time while employed by Gartner, to discontinue or diminish their business with Gartner, or otherwise interfere with or adversely modify their relationships with Gartner;

d) For a period of twelve (12) months following the entry of this order, Faramo and Van Decker shall not work for Hackett, directly or indirectly, in any role that involves the development, production, marketing or selling of syndicated research or other products or services that are competitive with existing or planned products or services of Gartner.

So ordered.

This injunction issues without a bond.

Dated at Bridgeport, Connecticut, this 7th day of November 2023.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge